# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

EDWARD SMITH,                                    Consolidated Cases Nos.
                                                 1-03-cv-189; 1:03-cv-422

      Plaintiff

      vs

JOHN SEARS, et al.,                              **REPORT AND**
                                                 **RECOMMENDATION**
      Defendants                           (Weber, J.; Hogan, M.J.)

Plaintiff, an inmate at the Warren Correctional Institution (WCI), brings this prisoner

civil rights action under 42 U.S.C. § 1983 alleging a violation of his constitutional rights.  The

remaining defendants in this matter are John Sears, Carl Mockabee, James Scott, Jamie Gee,

Sandra Crawford, Jody DeHart, Richard Jesko, Joseph Little, Wanza Jackson, Adam Keesler,

Jason Back, and Correctional Officer Weeks.  This matter is before the Court on defendants'

motion for summary judgment (Doc. 52), plaintiff's memorandum in opposition (Doc. 56), and

defendants' reply memorandum (Doc. 58), and on plaintiff's motion for preliminary injunction.

(Doc. 54).

A motion for summary judgment should be granted if the evidence submitted to the court

demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving

party must demonstrate the absence of genuine disputes over facts which, under the substantive

law governing the issue, could affect the outcome of the action.  *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is

required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

When plaintiff initially filed Case No. 1:03-cv-189, he asserted four claims: a First Amendment freedom of religion claim, excessive use of force claim, denial of medical care

2

claim, and denial of access to the courts claim.  After sua sponte screening of the complaint, *see* 28 U.S.C. § 1915A(b), the Court permitted plaintiff's complaint to proceed on his First Amendment freedom of religion claim.  However, plaintiff's excessive use of force claim, denial of medical care claim, and denial of access to the courts claim were dismissed without prejudice to refiling after plaintiff showed he exhausted his administrative remedies.  Plaintiff refiled these three claims in Case No. 1:03-cv-422.  *See* Case No. 1:03-cv-422, Doc. 1, Appendix.  On April 16, 2004, the Court consolidated Case Nos. 1:03-cv-189 and 1:03-cv-422.  By Order dated May 11, 2004, the Court granted plaintiff permission to utilize the complaint filed in Case No. 1:03-cv-189 as his "amended complaint" in this consolidated matter which now includes all of plaintiff's original four claims.[1] (Doc. 35).

Because plaintiff paid the filing fee in this consolidated matter and is not proceeding *in forma pauperis*, he was responsible for serving a complete copy of the amended complaint on all defendants named in the amended complaint in compliance with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 4.  Service of process was not accomplished in accordance with Rule 4 on defendants Reginald Wilkinson, Anthony Brigano, Cheryl Jorgensen-Martinez, – Nelson, – Taylor, – Johnson, – Morgan, – Engel, – Ball, – Harris, – Wilson, – Burton, – Connelly, – Gregory, Deputy Warden Bowman, – Whalen (improperly identified as Weyland), Nurse John (John Davis), and John Does, and on February 23, 2005, the complaint against these

---

[1]     To the extent plaintiff now attempts to raise retaliation claims under the First Amendment (Doc. 56 at 7-9), he is barred from so doing.  He has failed to show he exhausted any alleged retaliation claims prior to filing this lawsuit, see 42 U.S.C. § 1997e(a), and, in any event, his conclusory assertions do not show a sufficient causal nexus between his complaints concerning prisoner mail and the forced cutting of his beard and placement in general population segregation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037-39 (6th Cir. 2001).  There is an insufficient temporal proximity between plaintiff's complaints and the other alleged adverse actions and plaintiff has failed to present evidence showing his complaints were a substantial or motivating factor for the adverse actions.  *Smith*, 250 F.3d at 1038.

defendants was dismissed without prejudice for failure of service. (Doc. 47).  The remaining defendants now seek summary judgment on all claims.

## FACTS

Plaintiff entered the Warren Correctional Institution on August 31, 1997 and is a Protective Custody inmate. (Doc. 52, Exh. G, McIntosh Aff.).  He alleges that on January 30, 2001, he submitted legal work to defendant Little for mailing.  Plaintiff states that approximately one week prior to January 30, he advised various staff members including Deputy Warden Pringle that there was a problem with the timely mailing of legal mail to the courts.  Plaintiff was in the process of preparing an Application to Reopen his direct appeal in State court and the 90 day deadline was approaching.  He alleges he hand delivered his Application to Reopen his direct appeal to defendant Little on January 30, 2001 and advised him of the impending deadline. (Doc. 56, Exh. D).  Plaintiff states that defendant Little was upset that plaintiff spoke to Little's supervisors about delayed mail and said, "Mr. Smith, you do not go over my head.  I might forget not to sign this cash slip.  Now, get out of my office before I put you in the hole." (Pl. Depo. at 20).  Plaintiff states defendant Little did not sign the cash slip until February 5, 2001 when the cashier's office sent it back to Little for a witness signature. *Id*.  Plaintiff's Application to Reopen his direct appeal was filed on February 8, 2001, seven days after the expiration of the 90 day period. (Doc. 56, Exh. E-1).  On July 1, 2001, the Ohio First Appellate District Court denied as untimely plaintiff's Application to Reopen his direct appeal, finding that plaintiff failed to demonstrate good cause for the delay. (Doc. 56, Exh. E-2).  Plaintiff asserts the delayed processing of his legal mail resulted in the adverse ruling by the State appellate court.

Plaintiff also alleges he is a Jewish convert and that it is against his religious beliefs and

practice to cut his beard. Pursuant to Ohio Admin. Code § 5120-9-25(F), "[s]ideburns, beards, and moustaches must be neatly trimmed. Facial hair must not protrude more than one-half inch from the skin." Plaintiff states that in September 1997, shortly after his arrival at WCI, he was ordered to cut his beard by a prison official, but refused because of his religious beliefs. (Pl. Depo. at 11). Plaintiff states he is a Jewish convert and has "accepted the doctrine in which the Torah says as one of the tenets and you are to obey all mighty (sic) God do not cut your beard off." *Id*. at 25. To plaintiff, his beard signifies he has been ordained by God as one of his chosen. *Id*. at 26. Plaintiff states he tries to follow the "commandments" of Almighty God as his creator and maker and has engaged in personal study of the Torah since entering prison. *Id*. at 26-27. He states he reads the King James Bible, the Hebrew Bible and the Torah, and through his lifestyle tries to follow God's laws. *Id*. at 29-30. Plaintiff states he did not go through any formal conversion to convert to Judaism. *Id*. at 33.

Plaintiff states that in September 1997, he was ordered to cut his beard but refused. (Pl. Depo. at 13). He states he spent six months, five days in disciplinary segregation for his refusal to cut his beard. *Id*. Thereafter, he "never did hear another question, demand, ticket or anything for three years, and ten months that asked to cut my beard until I complained to the Central Office about inmates['] mail reaching the courts in a timely manner. . . ." *Id*. Plaintiff submits prison photographs of himself with a full beard from February and April of 2001. (Doc. 56, Exhs. N, O, P, Q). Plaintiff states that after he complained about the mail in October 2001, he was given an order to cut his beard, but again refused. Plaintiff alleges that on December 13, 2001, he was placed in segregation for refusing to cut his beard.

On May 2, 2002, plaintiff's beard was forcibly cut by prison officials. On that date,

5

plaintiff was ordered to "come to the middle area (sic) that [his] beard was going to be force-cut." (Doc. 1 at 4)[2].  Plaintiff states:

> I refused to walk to the chair so I was carried there.  An Inmate Barber was brought there to cut my beard.  I was belt-cuffed (handcuffs attached to a thick, heavy belt) which was tightly squeezed around my chest causing me to labor to breathe.
>
> The Inmate Barber cut my hair with scissors, then when he attempted to cut my beard with clippers, I rejected and I was forced to the floor by at least 6 of the defendants while the other as-stated defendants watched.  The approx. 6 defendants forced me onto the floor, on my stomach, while one defendant was putting pressure on my knee, leg, and foot (trying to break it); another defendant had his weight with his knee in my lower back, left shoulder, right side and neck, forcing the side of my face to the floor.  I cried out when the defendants were applying pressure which I could not bear and then Def. Sears said: "stop resisting".  Six defendants knowingly acquiesced in this act.

(Doc. 1 at 4).  Plaintiff alleges that during the process of the forced cutting of his beard, excessive force was used against him.  He alleges he was denied medical treatment for four days. (Doc. 1 at 4).  Plaintiff states he still suffers pain to this day as a result of the excessive force used against him. (Pl. Depo. at 53).

Defendants present evidence that plaintiff has been in Protective Control throughout his incarceration for his own safety.  Plaintiff has a history of failing to obey orders (Class II, Rule 1) at least 16 times. (Doc. 52, Exh. B).  On three occasions, plaintiff has been found guilty of possession of contraband (Class II, Rule 8). (Doc. 52, Exh. C).  Many of the disobedience of order charges were based upon his refusal to cut his beard pursuant to Ohio Admin. Code § 5120-9-25.  Plaintiff has consistently refused to cut his hair and records indicate he has had approximately four forced haircuts since he has been at WCI. (Doc. 52,  Exh. G, McIntosh Aff.

---

[2]  Plaintiff's verified amended complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

¶¶14-17).  Defendants present evidence that with the exception of not cutting his beard, plaintiff fails to adhere to the practice of Judaism.  There are six inmates at WCI who identify themselves as Jewish, but plaintiff is not one of them. (Doc. 52, Exh. D).  While there is a contract Rabbi who regularly comes to the institution to meet with those inmates and to provide guidance to the institution for accommodating their religious beliefs during Jewish holidays, the Rabbi states he has never met plaintiff. (Doc. 52, Exh. E, Kalmanson Aff.).  Recently, accommodations were made to those six inmates in observance of two Jewish holidays, Purim and Passover. (Doc. 52, Exh. D).  A Memorandum from the WCI Chaplain to pertinent staff members identified those inmates and explained the particular accommodations that needed to be made. *Id.*  Plaintiff did not participate in either of those holidays.  He did not ask for the special foods that are required for Passover.  When asked what Purim was plaintiff answered, "Purim is just a way of showing purity, showing purity of what God's word is" (Pl. Depo. at 32) rather than identifying it as a Jewish holiday that commemorated the book of Esther.  In answer to the question "So that word means purity to you is that right?" he answered "Yes." *Id*.  The affidavit from Rabbi Kalmanson indicates the requirements for Orthodox Jews:

> 1. Orthodox Jews are required to keep their beards but do not have to have long hair. Men are to keep their hair short.
>
> 2. There are a list of practices that must be followed in order to be a converted Orthodox Jew. They include:
>     a) the wearing of a head covering at all times.
>     b) only eating kosher food.
>     c) reading from a separate prayer book.
>     d) having full knowledge of the laws of the religion and the practices.
>     e) a questioning by a Rabbi to determine whether the convert has sufficient knowledge to be converted.
>     f) a ritual emersion in pure water.
>     g) and he must be circumcised.

(Doc. 52, Exh. E, Kalmanson Aff. ¶¶11, 12).  Plaintiff often purchases non-kosher food from the commissary. (Doc. 52, Exh. F).  When first asked at his deposition if he has been circumcised, plaintiff testified "no." (Pl. Depo. at 56).  He later changed his testimony and stated he has been circumcised. *Id.* at 58.  A prison official reported the contrary. (Doc. 52, Exh. G, McIntosh Aff. ¶30).

A medical exam report showed no visible injuries following the forcible cutting of plaintiff's beard on May 2, 2002. (Doc. 52, Exh. J).

### Defendants' Motion for Summary Judgment Should be Granted on Plaintiff's Denial of Access to the Courts Claim.

Prisoners have a fundamental right of access to the courts under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  Such access to the courts must be "adequate, effective, and meaningful."  *Bounds*, 430 U.S. at 822.  Meaningful access embraces the right to adequately prepare and file the necessary legal documents.  *Bounds*, 430 U.S. at 823-24; *Johnson v. Hubbard*, 698 F.2d 286, 288 (6th Cir. 1983), *cert. denied*, 464 U.S. 917 (1983).  This right of access must be freely exercisable without hindrance.  *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir. 1983).  Restricted times, places, and manner in which inmates may engage in legal research and preparation of legal papers are constitutional so long as the regulations do not frustrate access to the courts.  *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).

To survive summary judgment on a claim of denial of access to the courts, plaintiff must establish that he suffered an actual injury as a result of the alleged denial. *Lewis*, 518 U.S. at 349. *See also Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).  An "actual injury" does not occur

"without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers,* 238 F.3d 423 (6th Cir. 2000)(unpublished), 2000 W.L. 1888734, **1, citing *Lewis*, 518 U.S. at 354-56; *Pilgrim*, 92 F.3d at 416.  In other words, an inmate who claims that his access to the courts was denied must present evidence showing he was actually impeded in an existing or contemplated non-frivolous legal proceeding. *Lewis,* 518 U.S. at 351-53; *Hadix*, 182 F.3d at 406.  The plaintiff must "show actual prejudice to non-frivolous claims." *Hadix*, 182 F.3d at 406.  Where a prisoner's claim is "doomed to fail in any event" without regard to the prison official's action, the prisoner has not suffered an actual injury for purposes of his First Amendment claim. *Roberts v. Wingard*, 210 F.3d 373 (6th Cir. 2000) (unpublished), 2000 W.L. 377424, **2 (prisoner's failure to file affidavit outlining civil actions pursuant to Ohio law with notice of appeal doomed his appeal without regard to the delay cause by the defendants' actions).

In the instant case, plaintiff fails to establish a claim for relief for a denial of access to the courts.  On November 26, 2001, plaintiff filed a petition for writ of habeas corpus in this Court raising, *inter alia*, the three issues set forth in his Application for Reopening before the Ohio court of appeals.  *See Smith v. Brigano*, Case No. 1:01-cv-814 (Doc. 1).  A review of plaintiff's federal habeas corpus proceedings indicates the three issues raised in his Application for Reopening, while barred from review by reason of procedural default/waiver, were nevertheless considered on their merits in conjunction with plaintiff's ineffective assistance of counsel claim. *Smith v. Brigano*, Case No. 1:01-cv-814 (Doc. 20 at 26-36; Doc. 25).  The Court found each of the three claims failed to prejudice plaintiff's position on appeal and thus to be without merit. *Id*. Thus, even assuming defendant Little's actions delayed the Ohio court of appeals' receipt of

plaintiff's Application to Reopen, his claims were "doomed to fail in any event" without regard to defendant Little's action.  Thus, plaintiff has not suffered an actual injury for purposes of his First Amendment claim.  *See Roberts v. Wingard*, 210 F.3d 373 (6th Cir. 2000) (unpublished), 2000 W.L. 377424, **2.  Because the claims asserted in plaintiff's Application for Reopening lacked substantive merit, plaintiff fails to show actual prejudice to non-frivolous claims and thus fails to establish a valid denial of access to the courts claim.  *See Colvin v. Schaublin*, 113 Fed. Appx. 655, 658, 2004 W.L. 2320322, **2 (6th Cir. 2004); *Carter v. Corrections Corp.*, 22 Fed. Appx. 559-60, 2001 W.L. 1540400, **1 (6th Cir. 2001).  Accordingly, summary judgment should be granted for defendants on plaintiff's denial of access to the courts claim.

### Defendants' Motion for Summary Judgment Should be Denied on Plaintiff's First Amendment Freedom of Religion Claim.

Plaintiff contends the enforcement of the grooming regulation under which his beard was forcibly cut on May 2, 2002 violated his First Amendment right to practice his religion.  His seeks monetary and injunctive relief on this claim.

Although prison inmates retain the right to religious freedom, *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Cruz v. Beto*, 405 U.S. 319 (1972), this right is subject to reasonable restrictions and limitations.  *See Cruz*, 405 U.S. at 322; *Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979).  An inmate who challenges the actions of prison officials which infringe upon his religious practices or beliefs must first show that the particular practice or belief "is religious in the [inmate's] own scheme of things" and "sincerely held." *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987).  Where the prison policy or action does not affect "an essential tenet" of the inmate's religious beliefs, no First Amendment violation will be found. *Abdur-Rahman v.*

10

*Michigan Department of Corrections*, 65 F.3d 489, 491 (6th Cir.1995).  *See also Spies v. Voinovich,* 173 F.3d 398 (6th Cir. 1999); *Abdullah v. Fard,*  974 F. Supp. 1112 (N.D. Ohio 1997), *aff'd,* 1999 W.L. 98529 (6th Cir. 1999).  If defendants' actions are determined to place a substantial burden on a central tenet of plaintiff's religious beliefs, then the Court must decide whether such actions are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

### A.  The sincerity of plaintiff's religious beliefs.

Defendants present evidence that plaintiff fails to adhere to many of the tenets of Orthodox Judaism and therefore the sincerity of his professed religious belief in not cutting his beard may be questioned.  The relevant inquiry for the Court is what plaintiff sincerely believes, not what others consider an important religious practice.  "A plaintiff . . . need not hew to any particular religious orthodoxy; it is enough for the plaintiff to demonstrate that a government has interfered with the exercise or expression of her or his own deeply held faith." *Werner*, 49 F.3d at 1479 n.1, citing *Thomas v. Review Bd.*, 450 U.S. 707, 714-16 (1981)("Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner . . . correctly perceived the commands of [his] faith.  Courts are not arbiters of scriptural interpretation.").  *See also Lewis v. Scott*, 910 F. Supp. 282, 288 (E.D. Tex. 1995) ("The question of whether or not the burden is a substantial one . . . can only be answered by examining plaintiff's belief. . . . [O]ther Muslims' understanding of plaintiff's religious obligations are irrelevant, if plaintiff's conception is both different and sincerely held."); *Moskowitz v. Wilkinson*, 432 F. Supp. 947, 949 (D. Conn. 1977)("It cannot be denied that different levels of observance exist among the world's Jews.  But the fact that some Jews do not

11

object to shaving, or that others accept the distinction between shaving and cutting, does not defeat the plaintiff's claim. It is his own belief that is asserted, not anyone else's.").

The Court finds questions of fact exist as to whether plaintiff sincerely believes that the maintenance of an uncut beard is central to his religious beliefs. On the one hand, defendants have presented evidence which calls into question the sincerity of plaintiff's "Jewish" beliefs. Defendants' evidence shows plaintiff fails to adhere to many of the tenets of "Orthodox Judaism." On the other hand, plaintiff's evidence indicates his belief is sincerely held. He testified at his deposition that to cut his beard would be a violation of God's commands and adherence to this belief is in keeping with the written religious texts he has studied while in prison. It appears that at least since 1997, plaintiff has not voluntarily cut his beard. The sincerity of his belief is further evidenced by his repeated refusal to voluntarily cut his beard in the face of and imposition of disciplinary sanctions. In view of the conflicting evidence presented by the parties, there is a question of fact as to the sincerity of plaintiff's religious belief in maintaining an uncut beard. Thus, summary judgment cannot be granted for defendants on this basis and the Court must examine whether the enforcement of the grooming regulation against plaintiff is reasonably related to legitimate penological interests under the *Turner* analysis.

### B. Turner analysis

In determining whether the actions of defendants in this case violate plaintiff's First Amendment rights, the Court must examine whether defendants' actions are reasonably related to legitimate penological interests. *O'Lone*, 482 U.S. at 349; *Turner*, 482 U.S. at 89. The Court's reasonableness inquiry is guided by several factors: whether there is a valid and rational

12

connection between the regulation or restriction and the asserted governmental objective; whether plaintiff has alternative means of exercising his right of freedom of religion; the impact that accommodation of the asserted right will have on others, such as inmates and guards, in the prison; and the existence of ready alternatives to the regulation or restriction that fully accommodate plaintiff's rights. *Turner*, 482 U.S. at 89-91. *See also Flagner v. Wilkinson*, 241 F.3d 475 (6th Cir.), *cert. denied*, 534 U.S. 1071 (2001); *Pollock v. Marshall*, 845 F.2d 656 (6th Cir.), *cert. denied*, 488 U.S. 897 (1988)(applying *Turner* analysis to an inmate's free exercise claim). The *Turner* factors are guidelines to be weighed and balanced in evaluating the reasonableness inquiry, rather than four prongs of a test which must each be satisfied. *Flagner*, 241 F.3d at 484; *Whitney v. Brown*, 882 F.2d 1068, 1076 (6th Cir. 1989).

As an initial matter, the Court recognizes that it must accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 103 (6th Cir. 1991), *cert. denied*, 112 S.Ct. 1682 (1992). The protection of internal prison security is "central to all other corrections goals." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). "[J]udgments regarding prison security 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Turner*, 482 U.S. 78, 86, quoting *Pell*, 417 U.S. at 827.

Defendants contend that there is a valid, rational connection between the grooming regulation and the legitimate interest in maintaining the ability to identify inmates quickly both

13

within the prison and in the event of an escape, and in suppressing contraband within the prison, and that courts have consistently recognized this connection. *See Pollock v. Marshall*, 845 F.2d 656, 659 (6th Cir.), *cert. denied*, 488 U.S. 897 (1988).  The same Ohio grooming regulation at issue here was upheld by the Sixth Circuit in *Pollock* against a challenge by a Lakota American Indian who sought to enjoin prison officials from cutting his hair.  As a general matter, the Ohio grooming regulation is rationally related to legitimate security interests. *See Hoevenaar v. Lazaroff*, 276 F. Supp.2d 811, 826 (S.D. Ohio 2003), *rev'd on other grounds*, 108 Fed. Appx. 250 (6th Cir. 2004), *cert. granted and judgment vacated on other grounds*, 125 S.Ct. 2536 (2005).  In examining the regulation as applied to plaintiff, however, the Court must determine whether there is substantial evidence in the record showing that prison officials have exaggerated their response to the potential security threats identified. *Flagner*, 241 F.3d at 487.  Where a plaintiff demonstrates the absence of a factual basis for such security concerns and calls into question the credibility of such assertions, resolution by summary judgment is not appropriate. *Id*.

Here, plaintiff points out that like the inmate in *Flagner*, he was permitted to grow his beard for three years and ten months without disciplinary consequences to himself or security threats to the institution.  He asserts that defendants have failed to present any evidence that additional staff were needed to perform security checks on plaintiff's beard, that plaintiff ever attempted to escape from prison, or that the length of his beard posed plumbing problems during the three years and ten months he was permitted to maintain his beard.  While plaintiff admits that he received three disciplinary tickets for possessing contraband, he argues that such tickets were issued during the time he maintained his beard and none of the contraband was recovered

14

from his beard.[3]  In view of the foregoing, plaintiff has raised serious questions concerning the

validity of the asserted penological interests asserted by defendants.

With regard to the second *Turner* factor, defendants concede that courts have indicated

there are no less restrictive means to maintaining a long beard if the regulation is continued to be

enforced against plaintiff.  *See Flagner*, 241 F.3d at 486.  In terms of the third *Turner* factor, the

impact on corrections officers and other inmates in permitting plaintiff to maintain his beard,

defendants point to the concerns outlined by a prison official in *Pollock v. Marshall*, 845 F.2d

656, 658-59 (6th Cir. 1988).  However, defendants have not presented any evidence that other

inmates have complained about or resented plaintiff during the time the grooming regulations

were not enforced against plaintiff for three years and ten months, or that any additional staff or

financial resources were committed toward providing more security for plaintiff.  As to the

fourth *Turner* factor, ready alternatives, defendants argue that plaintiff has failed to suggest any

compromise.  Yet, the *Flagner* Court found that having the inmate "search his own beard" by

running his own fingers through it, a process which took two to three seconds to perform, "is an

'alternative that fully accommodates the plaintiff at a *de minimis* cost to valid penological

interests.'" 241 F.3d at 486.

Plaintiff's experience during the three years and ten months the grooming regulation was

not enforced against him casts doubt on the security concerns raised by defendants.  *See Flagner,*

241 F.3d at 487. While defendants have articulated generalized reasons supporting the grooming

regulation, the absence of a factual basis for the asserted security concerns as they relate to

---

[3]       Plaintiff was charged with possession of a walkman that did not belong to him, hiding a
twenty dollar bill under his mattress, and possessing a pillow case and door stop. (Doc. 52, Exh. I).

15

plaintiff creates factual issues of credibility which cannot be resolved on summary judgment. *Id*. On balance, the *Turner* factors, at this juncture, weigh in favor of plaintiff.  Therefore, defendants' motion for summary judgment on plaintiff's First Amendment freedom of religion claim should be denied.


**Defendants are not Entitled to Qualified Immunity on Plaintiff's First Amendment Freedom of Religion Claim.**

Defendants contend that they are entitled to qualified immunity on plaintiff First Amendment free exercise claim because at the time the regulation was enforced against plaintiff, the rights controlling free exercise of religion and the grooming standards of prisons were less than clear.  A constitutional right is "clearly established," thereby precluding the application of qualified immunity, if "the law [is] clear in regard to the official's particular actions in the particular situation."  *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, 112 S.Ct. 187 (1991).  *See also Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.), *cert. denied*, 116 S.Ct. 524 (1995).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001), quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Saucier*, 121 S.Ct. at 2156.

Plaintiff's beard was forcibly cut on May 2, 2002.  On February 22, 2001, the Sixth Circuit decided *Flagner*, holding that the inmate could bring an as-applied challenge to the Ohio prison grooming regulation under the First Amendment.  While defendants argue that the

standards governing the religious rights of prisoners were less than clear given the state of flux of the law on the Religious Freedom Restoration Act and the Religious Land Use and Institutionalized Persons Act (Doc. 52 at 6), plaintiff in this case alleges a violation of his First Amendment rights only.  In light of the First Amendment law set forth in *Flagner* in 2001, plaintiff's right to grow his beard in a manner consistent with his sincerely held religious beliefs was clearly established at the time the defendants enforced the grooming regulation against him. Therefore, defendants are not entitled to qualified immunity in this matter.

### Defendants' Motion for Summary Judgment Should be Granted on Plaintiff's Eighth Amendment Claims.

The Eighth Amendment prohibition against cruel and unusual punishment governs an inmate's claim of excessive force. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995), *cert. denied*, 115 S.Ct. 2269 (1995); *Cornwell v. Dahlberg*, 963 F.2d 912, 915-916 (6th Cir. 1992).  To establish an Eighth Amendment claim for excessive force, the inmate must establish that the force was applied maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 501 U.S. 1, 7 (1992); *Pelfrey*, 43 F.3d at 1037; *Caldwell v. Moore*, 968 F.2d 595, 599-601 (6th Cir. 1992).  In making this determination, a court must consider the reasons for the use of force, the type and amount of the force used, and the extent of the injury inflicted.  *See Hudson,* 501 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320-322 (1986); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

Not every intrusion on a prisoner's bodily integrity will rise to the level of an Eighth Amendment violation, even if it appears in retrospect that the degree of force used was unreasonable and, thus, unnecessary. *Whitley*, 475 U.S. at 319; *Parrish v. Johnson*, 800 F.2d

600, 604 (6th Cir. 1986).  "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment."  *Parrish*, 800 F.2d at 604.

Here, it is undisputed that the defendants who subjected plaintiff to a forced cutting of his beard were doing so pursuant to the grooming regulations.  Aside from whether enforcement of the regulation against plaintiff violated his First Amendment rights, the regulation arguably supported the defendants' use of force in that plaintiff admittedly refused to cut his beard after being given a direct order.  *See Siggers v. Renner*, 37 Fed. Appx. 138, 2002 W.L. 847986 (6th Cir. 2002).  Plaintiff admits he resisted the cutting of his beard while in the barber's chair and was subsequently taken to the floor by the defendants.  While plaintiff states his shoulder was injured in the process of the forced beard cut, he presents no evidence showing the extent of his alleged injury, while defendants' evidence shows he suffered no injury.   Plaintiff has failed to present specific evidence showing the force used throughout this incident was applied maliciously and sadistically to cause harm rather than in a good faith effort to enforce compliance with the grooming regulation. *Hudson*, 501 U.S. at 7.  The record taken as a whole could not lead a rational trier of fact to find for plaintiff on his excessive use of force claim. *Matsushita*, 475 U.S. at 587.  Therefore, defendants' motion for summary judgment should be granted on this claim.

Likewise, defendants' motion for summary judgment should be granted on plaintiff's denial of medical care claim.  It appears that plaintiff has abandoned this claim as he fails to present any evidence or argument in response to defendants' motion in this regard.  Moreover, the only defendants named in his complaint in conjunction with this claim are defendants Nurse

18

John and Burton, neither of whom has been served with process in this lawsuit.  Therefore,

summary judgment should be granted for defendants on this claim as well.

**Plaintiff's Motion for Preliminary Injunction should be Denied.**

Plaintiff seeks an injunction prohibiting defendants from further cutting his beard,

claiming such action violates his rights to freely practice his religion under the First Amendment.

In determining whether to issue a preliminary injunction, this Court must balance the following

factors:

1.   Whether the party seeking the injunction has shown a
     substantial likelihood of success on the merits;

2.   Whether the party seeking the injunction will suffer
     irreparable harm absent the injunction;

3.   Whether an injunction will cause others to suffer
     substantial harm; and

4.   Whether the public interest would be served by a
     preliminary injunction.

*Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 n.3 (6th Cir. 1991); *Newsom v. Norris*, 888

F.2d 371, 373 (6th Cir. 1989); *Frisch's Restaurant, Inc. v. Shoney's, Inc*., 759 F.2d 1261, 1263

(6th Cir. 1985).  A preliminary injunction is an extraordinary remedy that should only be granted

if the movant carries his burden of proving that the circumstances clearly demand it. *Leary v.*

*Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  The movant must produce sufficient  evidence

showing all four factors favor preliminary relief.  *See Opticians Ass'n of America v. Independent*

*Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990).

Here, plaintiff has failed to present sufficient evidence showing he has a substantial

likelihood of success on the merits of his constitutional claim. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739. While plaintiff has presented sufficient evidence to survive defendants' motion for summary judgment on his First Amendment claim, as discussed above, serious questions of fact exist as to the sincerity of plaintiff's professed religious beliefs, as well as defendants' reasons for enforcing the grooming regulation against plaintiff. At this juncture, plaintiff has not carried the burden of persuasion that there is a substantial likelihood he will succeed on the merits of his First Amendment claim. *Leary*, 228 F.3d at 739. Accordingly, plaintiff's motion for preliminary injunction should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (Doc. 52) be **GRANTED** on plaintiff's denial of access to the courts claim, excessive use of force claim and denial of medical care claim.

2. Defendants' motion for summary judgment (Doc. 52) be **DENIED** on plaintiff's First Amendment freedom on religion claim.

3. Plaintiff's motion for preliminary injunction be **DENIED**.


Date:    7/11/2005             s/Timothy S. Hogan
                               Timothy S. Hogan
                               United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

EDWARD SMITH,                                         Consolidated Cases Nos.
                                                     1-03-cv-189; 1:03-cv-422
      Plaintiff

      vs

JOHN SEARS, et al.,

      Defendants

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

1:03cv 189 doc.# 58

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( *Printed Name*)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Edward Smith # A346-408
Warren Corr. Inst.
PO Box 120
Lebanon, OH 45036

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*    7004 0750 0003 9306 0578

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540